IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JEANIE DEHART MANZO,

                    Plaintiff,

     v.

SOCIAL SECURITY ADMINISTRATION,

                    Defendant.

No. CV-10-1062-HZ

OPINION AND ORDER

Tim D. Wilborn
WILBORN LAW OFFICE, P.C.
Tim Wilborn, Attorney at Law
P.O. Box 2768
Oregon City, OR 97045

       Attorney for Plaintiff

Richard A. Morris
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue

1 - OPINION AND ORDER

Suite 2900
M/S 901
Seattle, WA 98104-7075

Adrian L. Brown
U.S. ATTORNEY'S OFFICE
District of Oregon
1000 S.W. Third Ave.
Suite 600
Portland, OR 97204

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff, Jeanie Dehart Manzo ("Plaintiff" or "Manzo"), brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner found Plaintiff not disabled and denied her applications for Title II Disability Insurance Benefits ("DIB"), 42 U.S.C. §§ 401-34 and Title XVI Supplemental Security Income ("SSI") disability benefits, 42 U.S.C. §§ 1381-83f. For the reasons that follow, I REVERSE the final decision of the Commissioner, and REMAND this case for an immediate award of benefits.

## PROCEDURAL BACKGROUND

      On November 6, 2006, Plaintiff protectively filed her application for Title II DIB and Title XVI SSI, alleging a disability onset date of April 20, 2005. R. at 78, 138, 143, 240. Plaintiff was born on June 11, 1981, and was twenty-three years old at the time of her alleged disability onset date. R. at 85, Finding 7. Plaintiff's applications were denied, and she requested a hearing before an administrative law judge ("ALJ") of the Social Security Administration ("SSA"). R. at 87, 91, 98, 100. A hearing was held on July 31, 2009, before ALJ Riley J.

Atkins, who found Plaintiff not disabled.  R. at 86.  Plaintiff timely requested review of the ALJ's

decision, but the Appeals Council denied Plaintiff's request on July 31, 2009.  R. at 1.

## FACTUAL BACKGROUND

The parties are familiar with the medical and other evidence of the record.  Therefore, the

evidence will not be repeated here except as necessary to explain my decision.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  Disability claims are evaluated according to a five-step procedure.  See Valentine

v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).  The claimant bears the ultimate

burden of proving disability.  Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not,

the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one

of a number of listed impairments that the [Commissioner] acknowledges are so severe as to

preclude substantial gainful activity."  Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d),

416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner

proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20

C.F.R. §§ 404.1520(e), 416.920(e). If so, the claimant is not disabled. If the claimant cannot

perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work.

Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e)- (f), 416.920(e)-(f). If the

Commissioner meets his burden and proves that the claimant is able to perform other work which

exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ found Plaintiff had not engaged in

substantial gainful activity since her alleged April 20, 2005, disability onset date. R. at 80,

Finding 2. At step two, the ALJ found Plaintiff "has the following severe impairments: history of

substance abuse, in remission, and a learning disorder versus low intelligence." Id., Finding 3.

At step three, the ALJ found Plaintiff's impairments did not meet or equal the

requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at

81, Finding 4.

At step four, the ALJ found Plaintiff was not able to perform past relevant work. R. at

84, Finding 6. At step five, the ALJ found Plaintiff was not disabled because she could perform

the occupations of: (1) a produce sorter; (2) a small products assembler; and (3) a paper

sorter/recycler. R. at 85, Finding 10.

**STANDARD OF REVIEW**

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's."  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability.  Howard, 782 F.2d at 1486.  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

**DISCUSSION**

Plaintiff contends the ALJ erred by: (1) improperly discounting her allegations; (2) improperly rejecting the testimony of lay witnesses; (3) improperly rejecting the opinions of her treating and examining doctors and therapists; (4) finding her dysthymia, anxiety, and carpel tunnel syndrome not severe at step two of the sequential evaluation; (5) finding that her

impairments did not meet or equal Listing 12.05; and (6) providing an invalid hypothetical to the vocational expert ("VE").  I address each assignment of error in turn.

## I. Discount of Plaintiff's Allegations

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting her testimony.  The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1529(a); 416.929(a).  Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).  The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  Smolen, 80 F.3d at 1284.  The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  Id.  The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2005).

Because the ALJ made no affirmative finding of malingering and because the record
contains objective evidence of impairments that could reasonably be found to cause the
symptoms alleged by Plaintiff, the ALJ was required to provide clear and convincing reasons to
reject Plaintiff's complaints. Lingenfelter, 504 F.3d at 1036.

### A. Plaintiff's Testimony Regarding Pain

The ALJ concluded that "[d]espite any pain [Plaintiff] may experience, [she was] able to
lead an active lifestyle" and concluded that Plaintiff's "allegations of debilitating pain and
exertional limitations [were] not supported by the treatment record." R. at 82. In support of his
conclusions, the ALJ stated in pertinent part:

> [Plaintiff] provided a one-word, unsigned, undated note stating "fibromyalgia".
> However, there is no evidence of examination findings to support this diagnosis
> or any resulting limitations. There are references to carpal tunnel syndrome in the
> treatment record but no evidence of nerve conduction studies. She was instructed to
> wear a wrist brace at night but was later told not to use the brace. She was not
> considered a surgical candidate. In February 2009 [Plaintiff] was seen for cervical
> and back pain. Examination revealed muscle tension on palpation to the paracervical
> musculature radiating into the superior trapezius bilaterally as well as the
> mid-thoracic to rhomboidal trapezial muscle groups. She was prescribed Piroxicam
> and Flexeril. There is no evidence [Plaintiff's] muscle tension is expected to last for
> a 12-month period. Despite any pain she may experience, [Plaintiff] is able to lead
> an active lifestyle. In September 2007 [Plaintiff] reported working as a caregiver for
> an elderly man. She testified she did this work until January 2009. In September
> 2008 she reported driving a taxi part-time and helping her mother with housework.
> In December 2008 she reported she was looking for a nighttime job and wanted to
> renew her food handlers card and liquor license. While [Plaintiff] may nap during
> the day, there is no evidence this is a medical necessity.

R. at 82-83 (internal citations omitted).

The ALJ's reasons supporting his adverse credibility finding are not clear and convincing.
First, the ALJ improperly relied on the fact that no evidence supported a diagnosis of
fibromyalgia or carpal tunnel syndrome. R. at 82. The Ninth Circuit has "repeatedly stated . . .

7 - OPINION AND ORDER

[that] the ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings." Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). Additionally, the fact that Plaintiff was not a surgical candidate with respect to her carpel tunnel syndrome does not necessarily undermine her credibility. "[B]eing considered a candidate for surgery is not a prerequisite for the receipt of benefits. . . .[T]he mere fact that [a claimant does] not undergo surgery does not undermine his credibility." Rojas v. Astrue, No. ED CV 10–303–PLA, 2011 WL 2563178, at *5 (C.D. Cal. 2011). Furthermore, the simple fact that no evidence demonstrated Plaintiff's muscle tension was expected to last for a twelve-month period is not a clear and convincing reason supporting the ALJ's adverse credibility finding, especially where Plaintiff was prescribed medications for her muscle tension.

Second, the ALJ's assertions about Plaintiff's ability to lead an active lifestyle considerably exaggerate the evidence in the record. Although the record shows Plaintiff worked as a caregiver for an elderly man, it lasted only approximately one year and was only part-time. R. at 57-58. Moreover, it was limited to driving him to appointments, doing the dishes, taking out the garbage, and doing a little laundry. R. at 47-48. Similarly, Plaintiff's "helping her mother with housework" was limited to just "[h]ang[ing] out with her [mother], . . . tak[ing the] garbage out, sometime[s] mop[ping] the floor[,]" putting the dishes away, and helping her prepare meals by chopping or cutting up vegetables.[1] R. at 57-58. The limited caregiver activities Plaintiff performed here do not indicate an ability to sustain full-time work and do not detract from Plaintiff's credibility. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (claimant's ability to grocery shop, drive a car, and walk for exercise did not "in any way detract from her credibility

---

[1] Plaintiff testified that her mother "does all the cooking." R. at 57.

8 - OPINION AND ORDER

as to her overall disability"); <u>Reddick v. Chater</u>, 157 F.3d 715, 723 n. 1 (9th Cir. 1998) (limited cooking, cleaning, and shopping are not indicative of an ability to engage in sustained work activity); <u>Smolen</u>, 80 F.3d at 1284, n.7 (The Act does not require that "claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.").

Third, with respect to driving a taxi part-time, the information regarding this activity is significantly scant.  Other than a one-line statement by physician's assistant Camille Kingler stating Plaintiff "drives [a] taxi part-time," there is no other information related to this activity. R. at 432.  Nothing in the record indicates the length of time Plaintiff engaged in this job, the hours she worked, or even whether Plaintiff could adequately perform the job.  To the extent the ALJ relied on this evidence to support his adverse credibility finding, I conclude it is not a clear and convincing reason.

Fourth, with respect to Plaintiff's "looking for a nighttime job and want[ing] to renew her food handlers card and liquor license," R. at 83, 465, the Ninth Circuit has recognized that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  <u>Reddick</u>, 157 F.3d at 722; <u>see also</u> <u>Cooper v. Bowen</u>, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.") (Citation omitted).  Plaintiff's mere willingness to work in this instance falls short of being clear and convincing.

On the record before me, I find the ALJ's reasons for discounting Plaintiff's pain complaints are not substantial enough to meet the "clear and convincing" standard.

/ / /

9 - OPINION AND ORDER

**B. Plaintiff's Testimony Regarding Her Cognitive Limitations**

The ALJ concluded that Plaintiff's testimony regarding her "difficulties with reading, spelling and math" was "generally credible," but that the "evidence d[id] not establish debilitating cognitive limitations" because Plaintiff had "worked in the past as a cashier and left the job due to leg pain, not due to difficulty performing the work." R. at 83. The reason cited by the ALJ is not clear and convincing. The record shows Plaintiff worked part-time for two years at the Dollar Tree as a cashier ringing customers up, receiving money, and making change. R. at 37. This evidence, however, is not necessarily inconsistent with a low level of intellectual functioning. See Diagnostic & Statistical Manual of Mental Disorders, p. 43 (4th ed. Text Revision 2000) ("DSM-IV-TR") ("During their adult years, [people with Mild Mental Retardation] usually achieve social and vocational skills adequate for minimum self-support, but may need guidance and assistance when under unusual social or economic stress."); Brown v. Sec'y of Health and Human Serv., 948 F.2d 268, 270 (6th Cir. 1991) (the fact that claimant was able to use public transit, had a driver's license, visited friends, was able to make change at a grocery store, did his own laundry, cleaned his own room, was able to follow a road atlas, could read a newspaper, and had worked as a truck driver was not inconsistent with an IQ score of 68); Pedro v. Astrue, Cv. No. 10–6047–MA, 2011 WL 1100214, at *7 (D. Or. 2011) (ALJ's finding that claimant had a drivers' license, was able to live independently, handled her own hygiene, and took care of her children was not inconsistent with mental retardation).

In addition, the mere fact that Plaintiff left her job at the Dollar Tree due to leg pain, and not her inability to perform due to cognitive limitations, does not make Plaintiff any less credible

and does not amount to a clear and convincing reason supporting the ALJ's adverse credibility finding.

For the reasons discussed above, the ALJ's reasons for finding Plaintiff's symptom testimony not entirely credible cannot be sustained.

## II. Rejection of Lay Witness Statements

Plaintiff contends the ALJ failed to provide legally adequate reasons for rejecting the lay witness statements of Mary DeHart ("Ms. Dehart"), Plaintiff's mother.  I agree.

It is well established that, "[i]f the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  Here, the record shows Ms. Dehart completed a third-party function report stating Plaintiff's "left leg hurts," that Plaintiff's pain affects her sleep, that Plaintiff needs to sit and rest often because of the pain in her leg, and that Plaintiff is very slow in doing household chores.  R. at 174-77.  She also stated that Plaintiff is limited to lifting twenty pounds, can only walk one block before needing to stop and rest, has trouble breathing, can pay attention for only fifteen minutes at a time, has trouble reading, and "can't handle stress."  R. at 180-81.  In a check-box portion of the report, Ms. Dehart also indicated Plaintiff's impairments affect her lifting, squatting, bending, standing, walking, stair climbing, and understanding.  R. at 180.

The ALJ found Ms. Dehart "not entirely credible in light of [Plaintiff's] daily activities and her minimal treatment."  R. at 84.  He reasoned that Plaintiff "report[ed] she provides care for her mother, including assisting her with walking and shopping and performing household chores . . . [and that such] caregiver activities [were] inconsistent with the limitations described by her mother."  The mere fact that Plaintiff assists her mom with walking, shopping, and

11 - OPINION AND ORDER

household chores, however, is not inconsistent with any of the limitations described by Ms. Dehart.

With respect to Plaintiff's "minimal treatment," the ALJ failed to specify which impairment Plaintiff received only "minimal treatment" for and failed to cite any evidence supporting his finding.[2]  R. at 84.  Plaintiff asserts that any "minimal treatment" is properly attributed to her poverty and her insurance company's refusal to cover physical therapy for her right hand.  A review of the record shows Plaintiff testified on June 10, 2009, that she did not seek physical therapy for her right hand because her insurance did not cover it.  R. at 39-40.  To the extent the ALJ found Ms. Dehart not credible because Plaintiff failed to seek physical therapy for her right hand, such a finding was erroneous.  See, e.g., Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (claimant had a "good reason" for not taking a certain pain medication where his insurance did not cover such medication); Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (a claimant may not be found "not credible" for failing to obtain treatment when he cannot afford treatment).

In light of the above, I find the ALJ's reasons for rejecting Ms. Dehart's statements improper, and accordingly, his adverse credibility finding cannot be sustained.

## III.  Rejection of the Opinions of P. Cason, M.D. and Jane Arnell, LCSW

Plaintiff contends the ALJ erred by discounting the opinions of P. Cason, M.D. and licensed clinical social worker ("LCSW") Jane Arnell ("Arnell"), Plaintiff's therapist.  The Ninth Circuit "distinguish[es] among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining

---

[2] The Commissioner does not make any argument related to this issue.

12 - OPINION AND ORDER

physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  An ALJ may reject the uncontroverted opinion of a treating or examining physician only if he provides clear and convincing reasons supported by substantial evidence in the record.  Reddick, 157 F.3d at 725 (citation omitted).  If a treating or examining physician's opinion is controverted, the ALJ must still provide "specific and legitimate reasons" for rejecting it.  Id. (citation omitted).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831.  An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted).

Here, a questionnaire titled, Mental Abilities and Aptitudes Needed to Do Unskilled Work, was signed by both Arnell and Dr. Cason on March 31, 2009, and April 14, 2009, respectively.  R. at 443.  The questionnaire assessed Plaintiff's "ability to do work related activities on a day-to-day basis in a competitive full-time work setting."  Id.  (emphasis in original).  It asked that Plaintiff be rated in sixteen work-related functional areas in accordance with the following "rating scale": "a. Unlimited or very good[;] b. Limited but satisfactory[;] c. Seriously limited, but not precluded[;] d. Unable to meet competitive standards[; and] e. No useful ability to function."  Id.  Arnell and Dr. Cason rated Plaintiff as being "seriously limited" in her ability to: (1) remember work-like procedures; (2) maintain attention for two-hour segments; (3) sustain an ordinary routine without special supervision; (4) work in coordination or proximity to others without being unduly distracted; (5) perform at a sustained pace without an

unreasonable number and length of rest periods; (6) ask simple questions or request assistance; (7) accept instructions and respond appropriately to criticism from supervisors; and (8) deal with normal work stress.  Id.

The ALJ, however, concluded the opinions of Dr. Cason and Arnell were "not supported by the claimant's history" and assigned their opinions "little weight."  R. at 84.  In support of his conclusion the ALJ stated:

> While the claimant may require assistance with tasks such as financial aid applications, these are not "simple" tasks. There is no evidence she would have difficulties with simple, routine, repetitive, unskilled work. Ms. Arnell is not an acceptable medical source and while her assessment was co-signed by a medical doctor, there is no evidence Dr. Cason has seen or evaluated the claimant. The opinion is not consistent with the claimant's daily activities which involve caring for her mother, pursuing work, and managing household responsibilities including finances.

Id.

With respect to Dr. Cason, Plaintiff contends the ALJ erred by discounting his medical opinion on the basis that he did not examine Plaintiff.  I disagree.

Other than the questionnaire, Dr. Cason's medical opinion does not appear anywhere else in the record, and I find no evidence indicating that Dr. Cason treated or examined Plaintiff. Accordingly, it was not error for the ALJ to accord his opinion less weight in this instance. Lester, 81 F.3d at 830 (the opinion of a nonexamining physician is entitled to less weight than the opinion of an examining physician).

With respect to Arnell, the record shows she counseled Plaintiff at least sixteen times between November 13, 2008, and April 14, 2009.  R. at 455-59.  Plaintiff relies on Gomez v. Chater, 74 F.3d 967 (9th Cir. 1996) for the proposition that Arnell's opinion should have been accorded the same weight as the opinion of a treating doctor because she was working under the

14 - OPINION AND ORDER

direct supervision of Dr. Cason. Plaintiff's argument is unavailing. First, there is no evidence in the record indicating that Dr. Cason treated Plaintiff. Second, Gomez, 74 F.3d at 971 is distinguishable on its facts. In that case, the Ninth Circuit concluded that the nurse practitioner's opinion was "properly considered as part of the opinion" of the physician's opinion because she "worked closely under the supervision of [the physician] and . . . was acting as an agent of [the physician] . . . ." Id. Here, Arnell is not a nurse practitioner. Moreover, nothing in the record suggests Arnell "worked closely under the supervision" of Dr. Cason or "was acting as an agent" of Dr. Cason.

Contrary to Plaintiff's assertions, Arnell is an "other source" as defined under the social security regulations. 20 C.F.R. § 404.1513(d)(3) ("Public and private social welfare agency personnel" are considered "other sources"). The ALJ may disregard "other source" testimony if he gives "reasons germane to each witness." E.g., Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (quotation marks and citation omitted). The Commissioner asserts the ALJ properly concluded Arnell's opinion was not reliable because it was inconsistent with Plaintiff's daily activities, including caring for her mother, pursuing work, and managing household responsibilities. Def.'s Br., p. 10. Plaintiff's daily activities, however, are not inconsistent with Arnell's opinion. The mere fact that Plaintiff assisted her mother with household chores, was looking for work, and could do limited household chores on her own is not inconsistent with the conclusion that Plaintiff is seriously limited in her ability to do work related activities on a day-to-day basis in a competitive full-time work setting. See Lewis v. Astrue, No. C 06-6608 SI, 2008 WL 191415, at *7 (N.D. Cal. 2008) (claimant's passing the written section of her driver's license test with only limited help, filling out money orders, and raising five children on her own

were not inconsistent with mental retardation) (citations omitted); <u>Pedro</u>, Cv. No. 10–6047–MA,

2011 WL 1100214, at *7 (claimant's daily activities of reading, driving, and cleaning were not

inconsistent with mental retardation).  The ALJ's decision to give little weight to Arnell's opinion

was erroneous and cannot be sustained.

## IV.  The ALJ's Step Two Findings

Plaintiff contends the ALJ erred at step two of the sequential evaluation by finding her

dysthymia, anxiety, and carpal tunnel syndrome not severe.  A severe impairment is one that

"significantly limits" a claimant's "physical or mental ability to do basic work activities."  20

C.F.R. § 404.1520(c).  An ALJ must consider all of the evidence at step two to determine

whether a medically determinable impairment significantly limits the claimant's ability to

perform basic work activities.  Id. § 404.1520(a); <u>Yuckert</u>, 482 U.S. at 145.  "An impairment or

combination of impairments may be found 'not severe only if the evidence establishes a slight

abnormality that has no more than a minimal effect on an individual's ability to work.'"  <u>Webb v.</u>

<u>Barnhart</u>, 433 F.3d 683, 686-87 (9th Cir. 2005) (citation omitted); 20 C.F.R. § 404.1521(a) (an

impairment is "not severe" if it "does not significantly limit your physical or mental ability to do

basic work activities").  Step two is "a de minimis screening device [used] to dispose of

groundless claims." <u>Webb</u>, 433 F.3d at 687 (citations and quotation marks omitted).  Omissions

at step two are harmless if the ALJ's subsequent evaluation considers the effect of the impairment

omitted at step two.  <u>Lewis v. Astrue</u>, 498 F.3d 909, 911 (9th Cir. 2007).

Plaintiff argues the limitations assessed by Janice Volkin, Ph.D., a clinical psychologist,

and Arnell establish that her dysthymia, anxiety, and carpal tunnel syndrome are severe

impairments.  With respect to her alleged severe carpel tunnel syndrome, Plaintiff argues the

ALJ's finding was improper because she had "positive Phalen's and Tinel's test, swelling, and reduced range of motion." Pl.'s Opening Br., p. 9. She asserts that "[b]oth [she] and her mother have testified she has trouble holding a pen and carrying or manipulating objects with her right hand . . . and [had] a brace and medications prescribed for her condition." Id.

A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "[T]o satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice." E.g., Walsh v. Astrue, No. 1:10-cv-01060 LJO GSA, 2011 WL 3568861, at *8 (E.D. Cal. 2011) (citations omitted). With respect to Plaintiff's carpel tunnel syndrome, Plaintiff's reliance on her own statements and those of her mother are insufficient to establish that her alleged carpal tunnel syndrome satisfies the requirements at step two of the sequential evaluation. Plaintiff cites no other evidence establishing significant work-related limitations stemming from her carpal tunnel syndrome. With respect to Plaintiff's mental impairments, Dr. Volkin diagnosed Plaintiff with dysthymia when she was fifteen years old, and Arnell diagnosed Plaintiff with anxiety. R. at 412, 468. Nothing in the record, however, clearly demonstrates significant work-related limitations specifically stemming from either dysthymia or anxiety. The ALJ's step two findings were not erroneous. See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) ("[A] claimant must show more than the mere presence of a condition or ailment [at step two of the sequential evaluation].") (Citing Yuckert, 482 U.S. at 153).

/ / /

17 - OPINION AND ORDER

**V. Meeting or Equaling Listing 12.05**

**A.  Whether Plaintiff's Impairments Meet Listing 12.05**

Plaintiff argues the ALJ erred when concluding that she did satisfy Listing 12.05,

including Listings 12.05(B) and 12.05(C), at step three of the sequential evaluation.  "If a

claimant has an impairment or combination of impairments that meets or equals a condition

outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three, and

the ALJ need not make any specific finding as to his or her ability to perform past relevant work

or any other jobs."  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. §

404.1520(d)).  "An ALJ must evaluate the relevant evidence before concluding that a claimant's

impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to

support a conclusion that a claimant's impairment does not do so."  Lewis, 236 F.3d at 512

(citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)).

An impairment matches a listing if it meets all of the specified medical criteria.  Tackett

v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1990); see also 20 C.F.R. § 404.1525(d) ("To meet the

requirements of a listing, you must have a medically determinable impairment(s) that satisfies all

of the criteria in the listing.").  To qualify as presumptively disabled under Listing 12.05, a

claimant must "satisf[y] the diagnostic description in the introductory paragraph and . . . one of

the four sets of criteria" outlined in paragraphs A, B, C, or D.  20 C.F.R. Pt. 404, Subpt. P, App.

1, § 12.00(A).

The diagnostic description in the introductory paragraph of Listing 12.05 states as

follows: "Mental retardation refers to significantly subaverage general intellectual functioning

with deficits in adaptive functioning initially manifested during the developmental period; i.e.,

the evidence demonstrates or supports onset of the impairment before age 22." Id.

Here, the ALJ addressed only whether Plaintiff satisfied the diagnostic description in the

introductory paragraph of Listing 12.05. R. at 83. He did not specifically address whether

Plaintiff met the criteria of Listings 12.05(B) or 12.05(C). The ALJ found that "the evidence of

record d[id] not reflect the deficits in adaptive functioning required to establish a diagnosis of

mental retardation" because Plaintiff "ha[d] a driver's license, manage[d] a checking account, . . .

had her own apartment for several years, and ha[d] worked as a cashier in the past." R. at 83.

The Commissioner asserts that a diagnosis of mental retardation is a prerequisite to

meeting or equaling Listing 12.05 and contends the evidence does not support a diagnosis of

mental retardation. The Commissioner's assertions, however, were not articulated by the ALJ

and thus constitute improper, post-hoc rationalizations which I may not consider. E.g., Bray v.

Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court cannot rely upon

reasoning the ALJ did not express) (citation omitted). Furthermore, 20 C.F.R. Part 404, Subpart

P, Appendix 1, § 12.05 does not require Plaintiff to show, as a threshold issue, a diagnosis of

mental retardation. Instead, it simply requires the evidence demonstrate or support an onset of

"subaverage general intellectual functioning with deficits in adaptive functioning initially

manifested" before the age of twenty-two. Id.; see also Christner v. Astrue, 498 F.3d 790, 793

(8th Cir. 2007) ("[W]e have specifically held that a formal diagnosis of mental retardation is not

required to fall within the confines of section 12.05.") (Citation omitted); Lewis v. Astrue, No. C

06-6608 SI, 2008 WL 191415, at *5 ("a diagnosis of mental retardation is not required to meet

Listing 12.05") (citation omitted). Thus, the Commissioner's argument lacks merit.

19 - OPINION AND ORDER

Plaintiff contends the ALJ's finding that she did not meet the diagnostic description in the introductory paragraph of Listing 12.05 is not supported by substantial evidence. I agree. Here, the ALJ correctly noted Plaintiff testified that she has a checking account and had been living alone in her apartment for approximately three years. R. at 45-47. She, however, also testified that her mother helps her manage her checking account and stated her apartment is "low income" with subsidized rent of $22 per month. Id. Moreover, Plaintiff testified that both her mother and father had been supporting her financially for the past five months by giving her $520 per month. Id. The ALJ's reliance on only those portions supporting his conclusion while ignoring those detracting from it was improper. See Lingenfelter, 504 F.3d at 1035 (The district court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion and may not affirm simply by isolating a specific quantum of supporting evidence.") (Internal citations and quotation marks omitted); Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ may not selectively read the record).

Even assuming as true that Plaintiff managed a checking account with her mother, had her own apartment for several years, and worked as a cashier, I find that such evidence does not support the ALJ's conclusion that the introductory paragraph of Listing 12.05 was not met. Specifically, there is no indication that the intellectual demands of the activities relied on by the ALJ are in any way inconsistent with mental retardation. See Lewis v. Astrue, No. C 06-6608 SI, 2008 WL 191415, at *5 (claimant's "ability to take care of herself and her children, though certainly physically and emotionally demanding, is no indication of the intellectual demands of those activities and is not inconsistent with being mentally retarded"); Rainey v. Heckler, 770

F.2d 408, 409, 411 (4th Cir. 1985) (reversing and remanding for the award of disability benefits under Listing 12.05(C) where claimant had previously worked as a repairman, janitor, collection agent, security guard, and truck driver); Pedro, Cv. No. 10–6047–MA, 2011 WL 1100214, at *7 (reversing and remanding for the immediate calculation and award of benefits under Listing 12.05(C) where claimant had previously worked at the Bay Area Hospital in the laundry department and was currently working at Safeway in the deli department); Huber v. Astrue, No. CV10-8043-PCT-DGC, 2010 WL 4684021, *4 (D. Ariz. 2010) (concluding the claimant demonstrated deficits in adaptive function during her developmental period despite the ALJ's finding that claimant was literate, had a driver's license, was able to live independently, handled her own hygiene, and kept her house clean).  The ALJ's finding that Plaintiff did not meet the diagnostic description in the introductory paragraph of Listing 12.05 was erroneous.

### B. Whether Plaintiff's Impairments Equal Listing 12.05

Plaintiff asserts that even if it were properly determined that her impairments did not meet Listing 12.05, the ALJ's step-three finding should be reversed because he failed to address whether her physical and mental impairments in combination were equivalent to Listings 12.05(B) and 12.05(C).  "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."  Bursh v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

The Commissioner relies heavily on the Ninth Circuit's decision in Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) for the proposition that in this instance the ALJ was not required to provide a more detailed discussion of why Plaintiff's condition did not equal Listing

21 - OPINION AND ORDER

12.05.  Gonzalez, 914 F.2d at 1201, however, is inapposite because the decision in that case does

not indicate whether the claimant there had presented any evidence to establish equivalence

under a listing.  By contrast, here the record shows that on at least three separate occasions

Plaintiff's attorney wrote the ALJ letters and provided evidence in support of his proposition that

Plaintiff's impairments met or equaled Listing 12.05.  R. at 240, 242-44, 403-04.

Based on the foregoing reasons, the ALJ's findings at step three of the sequential

evaluation was erroneous and cannot be sustained.

## VI. The ALJ's Hypothetical to the VE

Plaintiff argues the ALJ failed to propound complete, accurate hypothetical questions to

the VE.  Specifically, Plaintiff argues the ALJ omitted her own allegations, the allegations of lay

witnesses, the limitations stemming from carpal tunnel syndrome and dysthymia, and the

limitations assessed by Plaintiff's treating and examining doctors and Arnell.  The Commissioner

responds that the RFC and hypothetical questions propounded to the VE accounted for all of the

limitations supported by the record.

At step five, the ALJ must show that the claimant can do other work which exists in the

national economy.  Andrews v. Shalala, 53 F3d 1035, 1043 (9th Cir. 1995).  The ALJ can satisfy

this burden by eliciting the testimony of a VE regarding the jobs the claimant would be able to

perform, given her RFC.  Tackett, 180 F.3d at 1101.  An ALJ must propound a hypothetical to

the VE setting forth all of the claimant's limitations and restrictions.  E.g., Roberts v. Shalala, 66

F3d 179, 184 (9th Cir. 1995).  The hypothetical must be "accurate, detailed, and supported by the

medical record."  Tackett, 180 F3d at 1101.  "If a hypothetical fails to reflect each of the

claimant's limitations supported by 'substantial evidence,' the expert's answer has no evidentiary

22 - OPINION AND ORDER

value." <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1167 (9th Cir. 2001) (citing <u>Gallant v. Heckler</u>, 753

F.2d 1450, 1456 (9th Cir. 1984)).

 As discussed above, the ALJ improperly discounted Arnell's opinion.  More important,

the record shows the ALJ did not include the limitations stated in Arnell's opinion in any of the

vocational hypotheticals to the VE.  Accordingly, the VE's testimony has no evidentiary value

and the ALJ's finding at step five of the sequential evaluation is not supported by substantial

evidence.

**VII. Remand**

 I turn last to the issue of whether this matter should be remanded for further proceedings

or for the calculation of benefits.  The decision whether to remand a matter for further

proceedings or for an immediate payment of benefits is within the discretion of the court and

generally turns on the likely utility of further proceedings.  <u>Harman v. Apfel</u>, 211 F.3d 1172,

1179-80 (9th Cir. 2000).  The court may "direct an award of benefits where the record has been

fully developed and where further administrative proceedings would serve no useful purpose."

<u>Smolen</u>, 80 F.3d at 1292.

 The Ninth Circuit has established a three-part test "for determining when evidence should

be credited and an immediate award of benefits directed." <u>Harman</u>, 211 F.3d at 1178.  The court

should grant an immediate award of benefits when (1) the ALJ has failed to provide legally

sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be

resolved before a determination of disability can be made, and (3) it is clear from the record that

the ALJ would be required to find the claimant disabled were such evidence credited.  <u>Id.</u>

(citation omitted).

On this record I conclude that a remand for a finding of disability and an award of benefits is appropriate. The ALJ improperly evaluated Plaintiff's testimony, the statements by her mother, and the opinion of Arnell.  Accorded the proper weight and consideration, the opinion of Arnell by itself clearly demonstrates Plaintiff is incapable of full-time employment.  As noted above, Arnell opined Plaintiff was "seriously limited" in her ability to: (1) remember work-like procedures; (2) maintain attention for two-hour segments; (3) sustain an ordinary routine without special supervision; (4) work in coordination or proximity to others without being unduly distracted; (5) perform at a sustained pace without an unreasonable number and length of rest periods; (6) ask simple questions or request assistance; (7) accept instructions and respond appropriately to criticism from supervisors; and (8) deal with normal work stress.  R. at 443. When questioned at the hearing on June 10, 2009, the VE expressly testified Plaintiff would be precluded from working if Plaintiff were in fact "seriously limited" in any of the areas assessed by Arnell.  R. at 66-67.  Credited as true, the improperly omitted evidence demonstrates Plaintiff is unable to perform gainful employment, and thus this case need not be returned to the ALJ for further proceedings.  Accordingly, a reversal and remand for an immediate calculation and award of benefits is proper.  See Lester, 81 F.3d at 834 (stating that if improperly rejected evidence demonstrates a claimant is disabled, remand for payment of benefits is proper); Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (Citation omitted).

/ / /

/ / /

24 - OPINION AND ORDER

**CONCLUSION**

For the foregoing reasons, this court REVERSES the decision of the Commissioner and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

Dated this  11th day of  October  , 2011.


/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge